UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDRE SWAFFORD                                    CIVIL ACTION

VERSUS                                            NO. 19-9541

BP EXPLORATION & PRODUCTION                       SECTION M (3)
INC. and BP AMERICA
PRODUCTION COMPANY

**ORDER & REASONS**

Before the Court is a motion by defendants BP Exploration & Production Inc. and BP

America Production Company (collectively, "BP") for summary judgment.[1]  Plaintiff Andre

Swafford filed tardily an opposition to the motion.[2]  Having considered BP's memorandum,

Swafford's opposition, the record, and the applicable law, the Court finds that summary

judgment dismissing Swafford's suit is warranted because Swafford has not produced an expert

report, which is required to prove his toxic-tort claim.

I.       BACKGROUND

This toxic-tort case arises out of the Deepwater Horizon oil spill that occurred on April

20, 2010.  On January 11, 2013, U.S. District Judge Carl J. Barbier, who presided over the

multidistrict litigation arising out of the Deepwater Horizon incident, approved the *Deepwater

Horizon* Medical Benefits Class Action Settlement Agreement ("MSA").  *See Brown v. BP Expl.

& Prod. Inc*., 2019 WL 2995869, at *1 (E.D. La. July 9, 2019).  The MSA includes a Back-End

Litigation Option ("BELO") that permits certain class members, such as clean-up workers who

---

[1] R. Doc. 24.
[2] R. Doc. 25.  Plaintiff's opposition was filed two days late on May 29, 2020, when it was due on May 27, 2020, under the applicable rules.  BP's motion was noticed for submission on June 4, 2020.  Local Rule 7.5 requires that a memorandum in opposition to a motion be filed no later than eight days before the noticed submission date, which in this case was May 27.

follow procedures outlined in the MSA, to sue BP for later-manifested physical conditions ("LMPC"). *Id.* The MSA defines a LMPC as a:

> physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and which is claimed to have resulted from ... exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, where such exposure occurred on or prior to ... April 16, 2012 for CLEAN-UP WORKERS.

*Id.*

Swafford alleges that he was exposed "through inhalation, airborne and direct contact to oil, dispersants, and other harmful chemicals" while he worked as a clean-up worker in response to the Deepwater Horizon oil spill.[3] Swafford was diagnosed with urothelial carcinoma bladder.[4] Swafford alleges that these medical conditions were "legally and proximately caused by exposure to oil, dispersants and other harmful chemicals from the Oil Spill over time."[5]

BP does not dispute that Swafford was an oil-spill clean-up worker or that he is a member of the MSA class.[6] BP also does not dispute that Swafford's alleged conditions, diagnosed after April 16, 2012, fit within the MSA's definition of a LMPC.[7] Rather, BP argues that it is entitled to summary judgment because Swafford has not submitted an expert report and, thus, cannot prove that his alleged medical conditions were legally caused by his exposure to substances related to the Deepwater Horizon oil spill.[8]

In his opposition to BP's motion for summary judgment, counsel for Swafford asserts

---

[3] R. Doc. 1 at 4-5.
[4] *Id.* at 5.
[5] *Id.*
[6] *See* R. Doc. 24-1 at 1.
[7] *See* R. Doc. 24-2 at 2.
[8] *See* R. Doc. 24-1 at 4.

that he had a miscommunication within his office and mis-calendared the expert report deadline.[9]

Additionally, Swafford provides the names of two experts he has retained, but admits that he

does not have a report from either expert to provide to BP at this time.[10]

## II.     LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).   "Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which the party will bear the burden of proof at trial."  *Id*.  A

party moving for summary judgment bears the initial burden of demonstrating the basis for

summary judgment and identifying those portions of the record, discovery, and any affidavits

supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.   If the

moving party meets that burden, then the nonmoving party must use evidence cognizable under

Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the

nonmoving party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).   The

---

[9] R. Doc. 25 at 1.   Given the procedural history of this case, the mis-calendaring is hardly a justifiable excuse.  Plaintiff filed a motion to continue several deadlines in the Court's original scheduling order, including the deadlines for both parties to make their expert disclosures.  *See* R. Doc. 17.  Plaintiff asked for an extension of 45 days, which would have made plaintiff's expert disclosures due on or about June 11, 2020.  BP opposed the motion to continue, but the Court granted the motion, extending the parties' expert disclosure deadlines by 15 days and expressly stating that plaintiff's expert disclosures were due on or before May 19, 2020.  *See* R. Doc. 23.  This extension afforded Swafford roughly half of the extension he requested for his expert disclosures even though it was opposed.

[10] R. Doc. 25 at 1.

substantive law identifies which facts are material.  *Id.*  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).  "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P.

4

56(c)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the

nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

### B.  BP's Motion for Summary Judgment

Pursuant to the MSA, a plaintiff bringing a BELO lawsuit for a LMPC must prove the

following elements:

> (i) The fact of the diagnosis, *i.e.* whether the class member was correctly
> diagnosed with the alleged LMPC;
>
> (ii) The amount and location of oil, other hydrocarbons, and other substances
> released from the MC252 Well and/or the *Deepwater Horizon* and its
> appurtenances, and/or dispersants and/or decontaminants used in connection with
> the response activities and the timing thereof;
>
> (iii) The level and duration of the class member's exposure to oil, other
> hydrocarbons, and other substances released from the MC252 Well and/or the
> *Deepwater Horizon* and its appurtenances, and/or dispersants and/or
> decontaminants used in connection with the response activities and the timing
> thereof;
>
> (iv) Whether the class member's alleged LMPC was legally caused by his or her
> exposure to oil, other hydrocarbons and other substances released from the
> MC252 Well and/or the *Deepwater Horizon* and its appurtenances, and/or
> dispersants and/or decontaminants used in connection with the response activities;
>
> (v) Whether any alternative cause exists for the alleged later manifested physical
> condition; and
>
> (vi) The amount, if any, of compensatory damages to which the class member is
> entitled.

*Legros v. BP Am. Prod. Co.*, 2018 WL 4853713, at *2-3 (E.D. La. Oct. 5, 2018).  Thus, although

a BELO plaintiff need not prove liability to recover damages, he or she must prove that exposure

to oil or other substances legally caused his or her physical condition.  *Id.* at *3.

Generally, "when the conclusion regarding medical causation is not one within common

knowledge, expert medical testimony is required to prove causation."  *Cibilic v. BP Expl. &*

*Prod.*, 2017 WL 1064954, at *2 (E.D. La. Mar. 21, 2017) (quoting *Lassiegne v. Taco Bell Corp.*,

202 F. Supp. 2d 512, 524 (E.D. La. 2002)).  Expert testimony is required to establish causation in toxic-tort cases where "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden" of proof.  *Seaman v. Seacor Marine, L.L.C.*, 326 F. App'x 721, 723 (5th Cir. 2009) (quoting *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).

The order extending the expert disclosure deadlines in this case required Swafford to produce to BP his expert reports by May 19, 2020.[11]  To date, Swafford has not produced any expert reports to BP.  Further, there is no evidence before the Court related to Swafford's medical condition or his diagnosis, or discussing harmful levels of exposure for the chemicals at issue or the quantities of those chemicals to which Swafford was exposed while he worked cleaning up the oil spill.  Therefore, Swafford has not put forward sufficient evidence to prove causation or even to place it at issue.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that BP's motion for summary judgment (R. Doc. 24) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 3rd day of June, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[11] R. Doc. 23 at 1.